IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:26-CR-10 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES R. KNEPP, II |
| v. | ) | |
| | ) | **GOVERNMENT'S RESPONSE TO DEFENSE OPPOSITION TO GOVERNMENT SENTENCING MEMORANDUM** |
| BRANDEN JAY LOUNSBURY, | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

This matter is before the Court on Defendant's written opposition memorandum (R. 19) to the Government's Sentencing Memorandum, objecting to the government's use at sentencing of the information about his flight from law enforcement, including the two body camera recordings of Indiana state troopers who pursued him on the day of his arrest (February 10, 2026) and that were exhibits to the government's sentencing memorandum (R. 17: Govt Sent. Memo, PageID 90-104 and 17-1 Exhibits Filed Manually), as well as a one-page FBI report from two Western District of Michigan agents summarizing Defendant's flight.[1]

The government intends to use this information at sentencing regarding the Reckless Endangerment During Flight enhancement under § 3C1.2 and sentencing factors under 18 U.S.C. § 3553(a). Congress has provided that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for purposes of imposing an appropriate

[1] Two search warrants (PING and cell site simulator) were also provided to the defense eight weeks ago (R. 19: Def. Oppos. to Govt Sent. Memo, PageID 110); those were obtained simply to locate Defendant in January and February 2026 after he failed to self-surrender on January 21, 2026 and they were inadvertently omitted from discovery. The government also provided a short email from the case agent dated February 10, 2026 advising of Defendant's flight (*id.*); the government provided this email in discovery while awaiting receipt of the FBI report by Western District of Michigan agents but it is largely duplicative of the report. The government will refer to these items collectively as "the discovery."

sentence." 18 U.S.C. § 3661; *Concepcion v. United States*, 597 U.S. 481, 486, 142 S.Ct. 2389 (2022) (district courts have broad discretion to consider any "information" about the defendant's character and conduct that it finds helpful for choosing the sentence). Section 6A1.3 of the United States Sentencing Guidelines states that, "Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy." "In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial," and even "[r]eliable hearsay evidence may be considered." U.S.S.G. § 6A1.3, Commentary. The discovery here about Defendant's flight from law enforcement clearly bears on his "conduct."

At the outset, it is important to clarify that while Defendant repeatedly notes that the First PSR did not apply the flight enhancement as if to put the government on notice then of its inapplication, what Defendant fails to mention is that the PSR writer inaccurately believed/stated in the First PSR that the arrest was "without incident" (R. 11: First PSR, § 8) – i.e., it lacked information about Defendant's flight altogether. The government thereafter learned that two Western District of Michigan agents had written a report about the flight, which we obtained and provided the PSR writer after the First PSR. Hence, the PSR writer addressed the enhancement *for the first time* in the *Final* PSR, which is why the government stated in its motion to continue sentencing (R. 14) it had no notice the +2 enhancement would not be applied in the Final PSR.

The PSR writer ultimately declined to apply it in the Final PSR for what it said was insufficient detail about the flight in the FBI report and a failure to identify the names of the officers who were endangered, though it did note they had to cross a highway during pursuit. In seeking more detail about the flight then, the undersigned learned for the first time there were body camera recordings of pursuing investigators, including troopers with Indiana State Police,

which were obtained after the Final PSR was filed and provided to the defense and PSR writer three weeks ago. Thus, the decision not to apply the enhancement in the Final PSR was made without benefit of the body camera recordings.

It is also important to note that none of the discovery in question contains *Brady* material under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), nor does it involve any aspect of the offense to which Defendant plead (Laser Strike on an Aircraft). It pertains strictly to his flight on February 10, 2026[2]—the substance of which he himself knew as the one who fled. The Sixth Circuit has previously held that if the defendant knew or the defense could have learned through reasonable diligence the essential facts of the information contained in the discovery, there is no discovery violation by the government, even if the discovery *did* rise to the level of *Brady*. *Jones v. Bagley,* 696 F.3d 475, 487 (6th Cir. 2012) (citing *Carter v. Bell,* 218 F.3d 581, 601 (6th Cir. 2000)); *United States v. Jones*, 34 F.3d 596, 600 (8th Cir. 1994) (When information is readily available to or already known by a defendant, the prosecution does not violate *Brady* by failing to disclose it.); *Doan v. Carter,* 548 F.3d 449, 460 (6th Cir. 2008) (Failure to disclose evidence known to the defense "cannot form the basis of a *Brady* violation."); *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) ("Brady obviously does not apply to information that is not wholly within the control of the prosecution."); *United States v. Adkins*, 161 F.4th 1130 (8th Cir. 2025), *reh'g denied*, No. 24-3185, 2026 WL 194936 (8th Cir. Jan. 26, 2026) (quoting *United States v. Zuazo*, 243 F.3d 428, 431 (8th Cir. 2001)) (The government does not suppress evidence in violation of *Brady* by failing to disclose that which the defense "had access [to] through other channels.").[3]

---

[2] The sum of the body camera footage (as summarized in the FBI report) is law enforcement's pursuit of Defendant on foot using a K-9 to track his scent, beginning at the car he fled from, and aided by fresh tracks in the snow through a wooded area, across a highway, and eventually resulting in his capture in a field, wet going from the creek, cold, and without a coat in winter temperatures.

[3] The PING and cell site simulator search warrants and email from the case agent do not contain *Brady* material either. The search warrant affidavits contain conversations Defendant had with the case agent about his self-

The defendant in *Adkins* sought to withdraw his guilty pleas for what he alleged was a discovery violation after the prosecution failed to disclose that the minor victim had gone missing, which Adkins said he learned for the first time at sentencing. *Adkins*, 161 F.4th at 1132-33. The defense essentially claimed, like the defense here, that the information could have changed how the case was resolved, which it was now prevented from doing. The Court, however, rejected that claim, finding that Adkins already knew the information. *Adkins*, 161 F.4th at 1134. The Court held that there is no discovery violation where the defense, using reasonable diligence, could have obtained the information themselves. *Id*; *see also, United States v. Ruiz*, 536 U.S. 622, 633, 122 S.Ct. 2450 (2002) (in which the Supreme Court held that even the withholding of material impeachment information – which the body camera footage and report in this case do *not* rise to the level of – does not render a defendant's guilty plea involuntary.).[4] Thus, the defense argument here that Defendant could not be properly advised before the change of plea without the discovery in question lacks merit.

While Defendant says the government violated Criminal Rule 16 by not providing the discovery in question sooner (R. 19: Def. Oppos. to Govt Sent. Memo, PageID 107), it should be noted that the government provided the discovery what will be *nine weeks and four weeks before the November 6, 2026 sentencing*, and it did so immediately upon learning of its existence, or in the case of the search warrants, upon realizing their inadvertent omission from prior

---

surrender and Jencks statements by Defendant's girlfriend and another friend; and the email merely summarizes Defendant's flight, hence information Defendant already knew firsthand.

[4] The defense was also provided at the outset of the case the Rule 5 transfer documents from the Western District of Michigan, the NDOH arrest warrant, and a February 18, 2026 Pretrial Services Report, advising of his arrest in Michigan, his active Indiana arrest warrant, and his reported "35 years" in the community here, as well as his lengthy criminal convictions, some occurring in Ohio and some in Indiana, including failures to appear and failure to comply with a police order or signal. The defense, through reasonable diligence, could (and would) have discussed with Defendant before a change of plea the issue of detention and the circumstances surrounding his arrest if for no other reason than to determine whether to file a release motion or suppression motion.

disbursement. Defendant seeks the most severe sanction, i.e., exclusion of the evidence, but neither Criminal Rule 16 not the Sixth Circuit *require* exclusion for a delay in discovery. *United States v. Clark*, 385 F.3d 609, 621 (6th Cir. 2004). "District courts should embrace the '***least severe sanction necessary***' doctrine, and hold that suppression of relevant evidence as a remedial device should be limited to circumstances in which it is necessary to serve remedial objectives." *United States v. Maples*, 60 F.3d 244, 247-48 (6th Cir. 1995) (emphasis added) ("suppression of evidence must be viewed as an undesirable remedy reserved for cases of incurable prejudice or bad faith conduct demanding punishment by the court."). There is no bad faith here. Thus, the most severe sanction of exclusion is simply not warranted factually or legally.

The only case Defendant cites regarding exclusion of the evidence is *United States v. Muhammad*, 948 F.3d 1449 (6th Cir. 1991), *cert. denied,* 112 S.Ct. 1239 (1992), which is actually 948 F.2d 1449. (R. 19: Def. Oppos. to Govt Sent. Memo, PageID 111). However, *Muhammad* actually supports the ***government's*** position. In *Muhammad*, the government disclosed the discovery at issue in the middle of trial, giving the defense little time to react and no time to prepare. *Id.* at 1454. An officer who was testifying disclosed for the first time to the government a statement the Defendant made on the day of the crimes about why he had not killed the police officer who responded to the bank robbery, which was highly probative. *Id.* The district court found no willfulness by the government to violate the discovery rules and permitted the government to use this evidence, over defense objection based on the discovery violation; the Sixth Circuit affirmed. *Id.*; *United States v. Glover,* 846 F.2d 339, 342 (6th Cir.), *cert. denied,* 488 U.S. 982, 109 S.Ct. 533 (1988) (reviewed under an abuse of discretion standard). Thus, while the defense is correct that *Muhammad* acknowledged the court's

discretion in deciding an appropriate sanction for a discovery violation, *Muhammad* actually supports the government's use of the evidence here.

Furthermore, the written FBI report—and to the extent it captures an agent's statements, the case agent's email too—all constitute *Jencks* material under 18 U.S.C. § 3500(a) (the *Jencks* Act), which need not be provided to the defense until after the witness testifies under 18 U.S.C. § 3500(a) and by local practice, shortly before trial. There has been no trial or testimony to date from those agents. Criminal Rule 16(a) "does not authorize the discovery or inspection of statements made by prospective government witnesses except as provided in [the *Jencks* Act]." *Smith*, No. CR 3:24-CV-00106, 2025 WL 3635051, at *1 (citing Fed. R. Crim. P. 16(a)(2), (3)). "As such, there is no authority by which [a district court] can compel the government to provide *Jencks* Act statements prior to the time any government witness has testified on direct examination at trial. *Id.* at *6 (citing *United States v. Maury*, 695 F.3d 227, 248 (3d Cir. 2012) *United States v. Hill*, 976 F.2d 132, 140 (3d Cir. 1992)).

While it has certainly always been the undersigned's longstanding practice to go above and beyond the mandates of both Criminal Rule 16 and the *Jencks* Act and provide such discovery before (and even without) testimony or trial, the government is not required to provide *Jencks* material at all until after the agent/witness testifies, per 18 U.S.C. § 3500(a). The government's expansive discovery practice should not be misused as a tool of exclusion when an FBI report or *Jencks* statements are not turned over before the law requires. *See e.g., United States v. Smith*, 2025 WL 3635051 (M.D. Pa. Dec. 15, 2025) (finding no authority to compel the government to provide *Jencks* material before the witness testifies or accelerate their local practice of disclosing it three days before trial); *United States v, Eisenberg*, 773 F.Supp. 662, 683 (D.N.J. 1991) (finding no authority to compel the government to disclose witness statements

before trial or accelerate their local practice of disclosing it the day before the witness testifies); *United States v. Casseus*, 282 F.3d 253, 257 (3d Cir. 2002) ("[I]t is clear that a criminal defendant does not have the right to full discovery of the government's case."). The government is not bound to provide broader discovery than Criminal Rule 16 and *Jencks* require. "The Supreme Court has repeatedly told us that even though a broad criminal discovery regime "might be desirable, the Constitution surely does not demand that much." *United States v. Tavera*, 719 F.3d 705, 717 (6th Cir. 2013) (quoting *United States v. Agurs*, 427 U.S. 97, 109, 96 S.Ct. 2392 (1976)).

Again, the discovery in question does not implicate *Brady*, it does not prove an alternative suspect, exculpate Defendant in any way, or even pertain to an element of the offense; nor does it pertain to events Defendant was not himself a part of. It relates to matters affecting sentencing and the sentencing factors under 18 U.S.C. § 3553(a). Thus, if the defense position is that *any* evidence pertaining to a sentencing issue automatically falls under Criminal Rule 16 and must be disclosed before a change of plea, then it should be required, for example, to turn over defense discovery in the form of expert reports of evaluations done of defendants that the Federal Defender's Office routinely provide to the government only one week before sentencing, sometimes less (e.g., in the case of *United States v. Essig*, 3:25-cr-420, two business days before the sentencing date), despite the fact that the reports are dated *months* before the change of plea. These reports could reveal information (e.g., admissions of hands-on conduct) that supports a sentencing enhancement, and unlike the discovery in this case, those reports contain information the government would typically have no way of learning from other sources. Yet, the Federal Defender's Office does not provide, or even disclose the existence of, these reports or the expert's CV until close to the eve of sentencing. If providing *expert* evidence one week or less

before sentencing satisfies the defense duty of discovery, then the government providing *non-*expert discovery pertaining to events Defendant himself was a part of *nine weeks and four weeks* before sentencing certainly would.

The defense next claims "there is no evidentiary cite" proving "Defendant fled to Indiana after being contacted by the case agent in mid-January 2026 and advised of the federal indictment in this case," and hence no nexus between the federal charge and his flight. (R. 19: Def. Oppos. to Govt Sent. Memo, PageID 108). However, the agent's conversation with Defendant in mid-January is detailed in the two search warrant affidavits provided to the defense eight weeks ago on August 24, 2026. (*Id.*, PageID 110). And again, Defendant obviously knew about this conversation even before receiving those search warrants because he participated in the conversation. There is also evidentiary support he fled to Indiana after this conversation because the PING search warrant affidavit documents that after his self-surrender date, he no longer showed up at his job, his girlfriend and other friend said they had not seen him since, and according to the FBI report, he was tracked to an address in Indiana Defendant fled from upon officers' arrival, after which he abandoned the car he was driving and fled on foot, leaving his passenger behind. The government need only prove a sentencing enhancement by a preponderance of the evidence. *United States v. Byrd*, 689 F.3d 636, 640 (6th Cir. 2012).

Furthermore, although Defendant claims the government cannot prove a nexus between his federal offense and flight given his Indiana warrant in December 2025 and that "it seems he remained in Indiana until his February 2026 arrest," this too was disproven by his own girlfriend and another friend, who both reside in Ohio. Paragraph 11 of the PING search warrant affidavit (case number 26MJ5041) details the *Jencks* statements by Defendant's girlfriend to the FBI after Defendant failed to appear for his January 21, 2026 self-surrender date on the federal charge:

> He was last seen on January 21, 2026 around 6:00-7:00 a.m. by LOUNSBURY's girlfriend, Heather Staton (STATON). STATON advised that at that time, LOUNSBURY told her he was leaving the residence to turn himself in. Since that time, STATON said she has not heard from or seen him. STATON thought LOUNSBURY was in custody until she was contacted by Affiant and advised of LOUNSBURY'S failure to self-surrender.

That same affidavit details *Jencks* statements by one of Defendant's friends that she last saw him at her residence the night before he was supposed to turn himself in to the FBI (paragraph 12):

> Affiant spoke to Leanne BARNES (BARNES), another known associate of LOUNSBURY. She advised that LOUNSBURY was at her residence on the evening of January 20, 2026. LOUNSBURY told BARNES he was turning himself in and asked BARNES not to get rid of his belongings that were in her garage while he was serving time. Since that time, BARNES has not heard from LOUNSBURY. BARNES believed LOUNSBURY was in custody until she was contacted by law enforcement and advised of his failure to self-surrender.

Hence, Defendant's own girlfriend and friend place him in Ohio at their residences in January 2026, disproving his claim he was in Indiana from December 2025 until his arrest in February 2026. The fact that he arranged his self-surrender with the FBI and then said these things to family and friends when he did – i.e., the day before and day of his pre-arranged self-surrender in *this* case – and then failed to appear establishes, and certainly by a preponderance which is all that is required, the nexus between his federal offense and his flight. In fact, it makes no sense that he would flee ***to*** Indiana where the state warrant for his arrest was active if he was actually fleeing ***from*** that same state warrant.

Defendant also states that, regarding his pending case in Indiana for which he failed to appear as scheduled on December 17, 2025, he "told his attorney that he had an anxiety attack and did not appear." (R. 19: Def. Oppos. to Govt Sent. Memo, PageID 109). First, it should be noted that this client-attorney statement is information the defense never provided to the government in discovery, despite its own duty of reciprocal discovery under Criminal Rule 16(b)(1). Second, unlike the discovery the government provided eight weeks ago and three

weeks ago, the substance of which Defendant knew firsthand as the one who fled, the government would have no way of discovering a defendant's privileged statement to an attorney *without* disclosure by the defense. Notwithstanding their own discovery violation, the defense uses it in addressing the enhancement. The defense can't have it both ways – exclude information the government *did* disclose nine weeks and four weeks before sentencing on the basis that disclosure was 'late,' while simultaneously using privileged information the defense never disclosed *at any point* to the government in discovery.

## III. CONCLUSION

For all of those reasons, the government should be permitted to use the discovery of Defendant's flight from law enforcement, whether in support of its request for application of the +2 Reckless Endangerment During Flight enhancement in § 3C1.2 or for purposes of the sentencing factors in 18 U.S.C. § 3553(a).

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney
Northern District of Ohio

By: /s/ *Tracey Ballard Tangeman* (0069495)
Tracey Ballard Tangeman
Assistant U.S. Attorney
433 N. Summit St., Suite 308
Toledo, Ohio 43604
Tel. No. (419) 259-6376
Fax No. (419) 259-6370
Tracey.Tangeman@usdoj.gov